## **DEPOSIT ACCOUNT CONTROL AGREEMENT**
### **(Springing Control)**

This DEPOSIT ACCOUNT CONTROL AGREEMENT (as amended from time to time, this "<u>Agreement</u>") is dated as of April 29, 2022, and entered into by and among HB2 Origination, LLC, a Delaware limited liability company ("<u>Customer</u>"), Bank7, an Oklahoma banking corporation ("<u>Depository Bank</u>"), and UMB Bank, N.A., a national banking association ("<u>UMB</u>"), as secured party in its capacity as indenture trustee and not in its individual capacity ("<u>Secured Party</u>").

Reference is hereby made to that certain Indenture dated as of the date hereof (as amended, restated, supplemented and otherwise modified from time to time, the "<u>Indenture</u>"), between Alpine Summit Funding LLC, a Delaware limited liability company (the "<u>Issuer</u>"), and UMB, as indenture trustee, paying agent and as securities intermediary.

Customer has established and maintains account number XXX6432 with Depository Bank (the "<u>Specified Deposit Account</u>"), and has agreed to enter into this Agreement in connection with the Indenture in order to grant to Secured Party a perfected security interest in the Specified Deposit Account. As used herein, Uniform Commercial Code shall mean the Uniform Commercial Code as in effect in the State of New York (the "<u>UCC</u>").

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

**SECTION 1.**  **<u>Control of Specified Deposit Account</u>**.

(a)  Customer hereby grants in favor of Secured Party, as security for the payment of the Secured Obligations (as defined in the Indenture), a security interest in the Specified Deposit Account and the funds on deposit therein.

(b)  Each of the parties hereto agrees that Depository Bank shall comply with instructions with respect to the disposition of funds in the Specified Deposit Account ("<u>Disposition Instructions</u>") originated by Customer at all times prior to the Exclusive Control Time (as defined below).

(c)  Secured Party hereby directs and instructs Depository Bank that (i) prior to the Exclusive Control Time, Depository Bank shall comply with any Disposition Instructions given by Customer, and (ii) on and after the Exclusive Control Time, Depository Bank shall not comply with any Disposition Instructions given by Customer. For the purposes of this Agreement, "<u>Exclusive Control Time</u>" means the opening of business on the second Business Day after the Business Day on which a notice substantially in the form of <u>Exhibit A</u> attached hereto (the "<u>Notice of Exclusive Control</u>") is received by Depository Bank from Secured Party at each and every address for Depository Bank set forth below Depository Bank's signature hereto. If the Notice of Exclusive Control is not received at such addresses until after 11:00 a.m. Central Time on any Business Day (or is actually received on any day that is not a Business Day), then for purposes of determining the Exclusive Control Time, the Notice of Exclusive Control will be deemed to have been received by Depository Bank on the next succeeding Business Day. As used in this

13341862v8

EXHIBIT 3

Agreement, the term "Business Day" means any day other than Saturday, Sunday or any other day on which Depository Bank is, or is authorized or required by law to be, closed for business.

(d)     Secured Party hereby acknowledges and agrees that it shall not send any Notice of Exclusive Control unless permitted under the terms of the Indenture.

(e)     Notwithstanding the foregoing, Depository Bank may (but shall not be obligated to) debit the Specified Deposit Account for any and all items that were originated by Customer prior to the Exclusive Control Time (including, but not limited to, checks, drafts, Automatic Clearinghouse (ACH) transactions, foreign exchange transactions or wire transfers).

This Agreement provides Secured Party with "control" of the Specified Deposit Account as legally defined under Article 8 and Article 9, as applicable, of the UCC, for purposes of perfecting its security interest in the Specified Deposit Account. Depository Bank confirms that it is a "Bank" as defined in Section 9-102(a)(8) of the UCC and the Specified Deposit Account is a "deposit account" within the meaning of Section 9-102(a)(29) of the UCC.

**SECTION 2.  Certain Other Agreements.**

(a)     If any conflict arises between this Agreement and the account agreement between Depository Bank and Customer with respect to the Specified Deposit Account, then the terms of this Agreement will govern and control.

(b)     Notwithstanding any provision of this Agreement to the contrary, (i) unless Depository Bank separately agrees in writing, Depository Bank shall not be obligated to disburse any funds in the Specified Deposit Account in response to Disposition Instructions by Secured Party other than by daily automatic standing wire, and (ii) as a condition to disbursing any funds in response to Disposition Instructions by Secured Party, Depository Bank may require such documentation as Depository Bank may reasonably request to establish the identity and authority of the individuals issuing Disposition Instructions on behalf of Secured Party (provided, however, that Depository Bank shall not be obligated to request any such documentation and shall incur no liability if it does not do so).

(c)     Depository Bank will have no duties to Secured Party except as expressly set forth in this Agreement. Depository Bank shall be fully protected in acting or refraining from acting in good faith on any request, notice, direction or instruction purporting to be from Secured Party (including, without limitation, a Notice of Exclusive Control and any Disposition Instructions). Depository Bank may follow Disposition Instructions by Secured Party even if the result thereof is that Depository Bank dishonors items presented for payment from the Specified Deposit Account, and Depository Bank will have no liability to Customer for the dishonor of such items in following such Disposition Instructions. Nothing in this Agreement shall require Depository Bank to follow instructions with respect to the Specified Deposit Account where doing so would violate any applicable law or order or ruling of any regulatory agency or court. Depository Bank shall not be liable to Customer or Secured Party for claims, losses, liabilities or damages suffered or incurred by Customer or Secured Party arising out of or in connection with this Agreement except to the extent such claims, losses, liabilities and damages directly result from Depository Bank's gross negligence, willful misconduct, or breach of this Agreement. In no event will Depository Bank be

liable to Customer or Secured Party for any indirect, special, consequential or punitive damages.

**SECTION 3.  Returned Items; Fees and Expenses of Depository Bank.**

(a)     Depository Bank hereby subordinates, to the security interest granted by Customer to Secured Party in the Specified Deposit Account, any security interest, lien or right of offset held by Depository Bank on or against the Specified Deposit Account, except for any security interest, lien or right of offset securing or otherwise available with respect to (i) any checks, drafts, wire transfers, ACH entries or other items deposited in or credited to the Specified Deposit Account that are returned for any reason or otherwise not collected, (ii) any adjustments or corrections of any posting or encoding errors, (iii) overdrafts on the Specified Deposit Account, and (iv) all reasonable and customary service charges, commissions, expenses, fees and other items ordinarily chargeable to the Specified Deposit Account (the items described in the foregoing subclauses (i) through (iv), collectively, "Charges").

(b)     Customer agrees to pay Depository Bank the amount of any reasonable and customary Charges upon demand.  Secured Party agrees to pay Depository Bank the amount of all unpaid reasonable and customary Charges for which there were insufficient funds in the Specified Deposit Account to satisfy the amount thereof, to the extent of the funds that Depository Bank transferred to or at the direction of Secured Party.

**SECTION 4. Indemnity**.  Customer agrees to indemnify and hold Depository Bank and its officers, directors, employees, affiliates, agents and attorneys (each an "Indemnified Person") harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses of any kind or nature whatsoever arising out of or in connection with this Agreement or the Specified Deposit Account (including, but not limited to, the reasonable fees and expenses of external counsel in connection with any investigative, administrative, or judicial proceeding, arising as a result of this Agreement whether or not any Indemnified Person shall be designated a party thereto) (all of the foregoing liabilities, claims, demands, losses, damages, costs and expenses, collectively, "Indemnified Items"); provided that, Customer shall have no obligation to any Indemnified Person under this Section 4 with respect to any Indemnified Item arising (a) from the gross negligence or willful misconduct of, or breach of this Agreement by, such Indemnified Person or (b) as a result of any dispute or claims solely between or among Indemnified Persons that a court of competent jurisdiction has determined in a final and non-appealable judgment did not involve actions or omissions of Customer.  To the extent Customer has failed to indemnify an Indemnified Person within thirty (30) Business Days after demand therefor, Secured Party agrees to indemnify and hold such Indemnified Person harmless from and against any and all Indemnified Items arising out of or in connection with Depository Bank's compliance with any request, notice, direction or instruction given by Secured Party with respect to the Specified Deposit Account; provided that, Secured Party shall have no obligation to any Indemnified Person under this Section 4 with respect to any Indemnified Item arising (a) from the gross negligence or willful misconduct of, or breach of this Agreement by, such Indemnified Person or (b) as a result of any dispute or claims solely between or among Indemnified Persons that a court of competent jurisdiction has determined in a final and non-appealable judgment did not involve actions or omissions of Secured Party.

**SECTION 5. Account Information**.     Customer hereby instructs Depository Bank, and

Depository Bank agrees, to furnish to Secured Party, upon the written request of Secured Party, bank statements with respect to the Specified Deposit Account that are customarily provided to customers of Depository Bank at the times such statements are normally provided to customers of Depository Bank, through the normal method of transmission, including United States mail.

**SECTION 6.  Modification**.  No amendment of this Agreement shall be effective unless the same shall be in writing and signed by each of the parties hereto.  No waiver of any rights of any party hereunder shall be effective unless the same shall be in writing and signed by such party.  Any such amendment or waiver shall be effective only in the specific instance and for the purpose for which given.

**SECTION 7.  Notices**.  Any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, or sent by e-mail, facsimile, United States mail or courier service and shall be deemed effective when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed; provided that, (a) notices to Depository Bank shall not be effective until and unless actually received and (b) any Notice of Exclusive Control sent to Depository Bank that is sent electronically or via facsimile shall be sent via both e-mail and facsimile.  For the purposes hereof, the address(es) of each party hereto shall be as set forth under such party's name on the signature pages hereof or such other address(es) as shall be designated by such party in a written notice delivered to the other parties hereto.

**SECTION 8.  Governing Law**.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY OTHERWISE APPLICABLE CONFLICT OF LAW PROVISIONS (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

**SECTION 9.  JURY WAIVER**.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**SECTION 10.          Successors and Assigns**.  This Agreement shall bind and benefit the parties hereto and their respective successors and permitted assigns.

**SECTION 11.          Execution in Counterparts**.  This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts taken together shall constitute but one and the same instrument.  Delivery of any executed counterpart signature page of this Agreement by facsimile, portable document format, or other electronic means will be effective as delivery of a manually-executed counterpart of this Agreement.  Signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

**SECTION 12.** **Termination**.  This Agreement shall terminate upon Depository Bank's receipt of a written notice from Secured Party referencing this Agreement and stating that this Agreement is terminated pursuant to this Section 12.  Depository Bank may terminate this Agreement upon thirty (30) days' prior written notice to the other parties hereto; provided that, Depository Bank may terminate this Agreement upon ten (10) days' prior written notice to other parties hereto upon a breach by Secured Party or Customer of this Agreement or any of the documentation governing the Specified Deposit Account.  The provisions of Sections 2(c), 3(b) and 4 shall survive any termination of this Agreement.

**SECTION 13.** **Rules of Construction**.  The section headings in this Agreement are inserted for convenience of reference only and shall not be considered a part of this Agreement for any other purpose or be given any substantive effect.  The words "herein", "hereof", and "hereunder" and other words of similar import in this Agreement refer to this Agreement as a whole, and not to any particular Section or clause contained in this Agreement.  Any provision of this Agreement which is deemed unenforceable or invalid in any jurisdiction will not affect the enforceability or validity of the remaining provisions of this Agreement or the same provision in any other jurisdiction.

**SECTION 14.** **Entire Agreement**.  This Agreement represents the entire and integrated agreement among the parties hereto and supersedes all prior negotiations, representations or agreements, either written or oral, with respect to the matters addressed herein.

**SECTION 15.** **Liability of UMB as Secured Party**.  Notwithstanding anything herein to the contrary, any amounts that may be due from UMB, as Secured Party, to Depository Bank hereunder are payable only from proceeds held by UMB, or otherwise from the funds available to UMB, in its capacity as indenture trustee pursuant to the Indenture, and not from the individual or company assets of UMB.

[*Signatures are on the following pages*]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized agents as of the day and year first above written.

**CUSTOMER:**

HB2 ORIGINATION, LLC

By: _____
Craig Perry
President and Chief Executive Officer

Notice Address:

HB2 Origination, LLC
3322 West End Avenue, Suite 450
Nashville, TN 37203
Attn: General Counsel
E-mail: cholmstrom@alpsummit.com

Signature Page to Deposit Account Control Agreement

**DEPOSITORY BANK:**

BANK7

By: _____
Henry Litchfield
Vice President


Notice Address:

Bank7
1039 NW 63rd Street
Oklahoma City, OK 73116
Attn: General Counsel
Facsimile: 405-810-7276
E-mail: henry.litchfield@bank7.com

Signature Page to Deposit Account Control Agreement

**SECURED PARTY:**

UMB Bank, N.A.,
in its capacity as Indenture Trustee

By: _____
Name: Jenna Kaufman
Title: Senior Vice President

Notice Address:

UMB Bank, N.A.
100 William Street, Suite 1850
New York, NY 10038
Attn: ABS Structured Finance
Facsimile: 646-650-3842
E-mail:  jenna.kaufman@umb.com and
michele.voon@umb.com

Signature Page to Deposit Account Control Agreement

**EXHIBIT A**

**FORM OF**

**NOTICE OF EXCLUSIVE CONTROL**

[_____, 20__]

Bank7
1039 NW 63rd Street
Oklahoma City, OK 73116
Attn:  General Counsel

Re:   **NOTICE OF EXCLUSIVE CONTROL– ACCOUNT NO(S). [_____]**

Ladies and Gentlemen:

We refer to that Deposit Account Control Agreement dated as of April 29, 2022, among HB2 Origination, LLC, a Delaware limited liability company, Bank7, an Oklahoma banking corporation, and UMB Bank, N.A., a national banking association, as indenture trustee and not in its individual capacity (as amended from time to time, the "Control Agreement"), a copy of which, together with any and all amendments thereto, is attached hereto.  Capitalized terms used but not defined herein shall have the meanings given to such terms in the Control Agreement.

This letter constitutes the Notice of Exclusive Control referred to in Section 1 of the Control Agreement.  The undersigned hereby instructs you to, on each Business Day commencing promptly after the Exclusive Control Time, remit all available funds in the Specified Deposit Account to the following account:

        [BANK NAME]
        [ADDRESS]
        ABA No.:[_____]
        Account No.:[_____]
        Account Name: [_____]
        Ref: [_____]

Sincerely,

UMB Bank, N.A.,
in its capacity as Indenture Trustee


By:_____
Name:_____
Title:_____


Exhibit A to Deposit Account Control Agreement